DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
MAIER GUTIERREZ & ASSOCIATES
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: 702.629.7900
Facsimile:  702.629.7925
E-mail:     djb@mgalaw.com

*Attorneys for Plaintiff Carmela Scafidi*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARMELA SCAFIDI, individually, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| TRUCKEE SOUTH, LLC d/b/a CLUB FORTUNE CASINO, a domestic limited-liability company; KENNETH MARTIN, an individual; DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, | |
| Defendants. | |

**COMPLAINT WITH JURY DEMAND**

Plaintiff CARMELA SCAFIDI ("Plaintiff"), by and through her attorneys of record, the law firm MAIER GUTIERREZ & ASSOCIATES, hereby demands a trial by jury and complains and alleges against the above named defendant, TRUCKEE SOUTH, LLC d/b/a CLUB FORTUNE CASINO ("Club Fortune Casino"); KENNETH MARTIN ("Martin"); DOES I-X; and ROE BUSINESS ENTITIES I-X, inclusive, as follows:

**JURISDICTION, VENUE AND LEGAL BASIS FOR THIS ACTION**

1.      This Court possesses jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

1

*seq*.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this district, as defendant maintains a facility and business operations in this district, employed Plaintiff in this district, and committed the discriminatory acts alleged herein in this district.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4. This civil action is brought by Plaintiff pursuant to federal common and statutory law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On or about November 4, 2020, Plaintiff submitted her Charge of Discrimination to the Nevada Equal Rights Commission ("NERC"), which became dual-filed with the Equal Employment Opportunity Commission ("EEOC"). This submission indicated that Plaintiff suffered from sex-based discrimination and harassment while she was an employee at Club Fortune Casino. This NERC filing fulfilled Plaintiff's obligation to initiate an administrative claim before filing suit.

6. On or about December 18, 2020, the NERC mailed Plaintiff a "Notice of Suit Rights" letter (*See* **Exhibit 1**) stating that she would have within 90 days of the letter's receipt to file suit.

7. Plaintiff received the NERC's "Notice of Suit Rights" letter on or around December 21, 2020.

8. Accordingly, by bringing a Charge of Discrimination to NERC and EEOC and waiting until NERC closed its file on the Charge and issued her a "Notice of Suit Rights" letter, Plaintiff has met all administrative prerequisites to bring this lawsuit.

## PARTIES

9. Plaintiff CARMELA SCAFIDI, is, and at all times pertinent hereto was, a resident of Clark County, Nevada.

10. Upon information and belief, defendant TRUCKEE SOUTH LLC d/b/a CLUB FORTUNE CASINO ("Club Fortune Casino") is, and at all times pertinent hereto was, a domestic limited-liability company conducting business in the State of Nevada, with Club Fortune Casino itself being located at 725 S. Racetrack Rd., Henderson, NV 89015.

2

11. Upon information and belief, defendant KENNETH MARTIN ("Martin") is, and at all times pertinent hereto was, a resident of Clark County, Nevada.

12. Plaintiff is not familiar with the complex corporate interrelationships through which Club Fortune Casino operates. The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of the defendants herein designated as DOES I through X and ROE CORPORATIONS I through X, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will seek leave of the Court to insert the true names and capacities of such defendants when the same have been ascertained and will further seek leave to join said defendants in these proceedings.

## GENERAL ALLEGATIONS

13. On or about August 14, 2019, Club Fortune Casino hired Plaintiff.

14. Plaintiff worked as a busser and deli clerk at Club Fortune Casino.

15. Plaintiff was a dedicated employee who frequently received positive feedback from both Club Fortune Casino guests and her co-workers and superiors, with many praising her for her positive attitude and willingness to help others.

16. During her time of employment at Club Fortune Casino, Plaintiff endured frequent sexual harassment from defendant Martin, who was employed at Club Fortune Casino as a Food and Beverage Manager.

17. On or around numerous occasions in September and October 2020, Club Fortune Casino Manager Martin made inappropriate and persistent sexual advances towards Plaintiff at work of a harassing nature. Examples of this include but are not limited to: Club Fortune Casino Manager Martin commenting to Plaintiff on how distracted he became by Plaintiff's body when she was in her regular (casual) clothes before and after being in her Club Fortune Casino uniform; Club Fortune Casino Manager Martin using his hands to smack Plaintiff's rear end while she was working at the deli counter at Club Fortune; and Club Fortune Casino Manager Martin repeatedly pressuring Plaintiff to meet with him (alone) socially outside of work.

18. With Club Fortune Casino Manager Martin being her superior, Plaintiff felt great pressure to acquiesce to his demands to meet outside of the workplace, as she feared or losing her job

3

if she continued to reject him.

19. On October 17, 2019, Plaintiff reluctantly agreed to Club Fortune Casino Manager Martin's latest request to go out for a drink after work. After his shift that night, Club Fortune Casino Manager Martin went to Plaintiff's house and met with her mother before taking Plaintiff to his vehicle, ostensibly to go to a bar or restaurant to get a drink. However, Club Fortune Casino Manager Martin insisted on driving to his residence first, supposedly to pick up his credit card. When he arrived at his residence, Club Fortune Casino Manager Martin told Plaintiff that she had to come up to his second floor apartment while he retrieved his credit card.

20. Plaintiff followed Club Fortune Casino Manager Martin's direction and went inside his apartment, opting to stay in the living room while he supposedly found his credit card.

21. While Plaintiff was in his apartment, Club Fortune Casino Manager Martin began insisting that Plaintiff become physically intimate with him and told her to remove her clothing.

22. Plaintiff repeatedly rejected Mr. Martin's advances, telling him three separate times that she did not want to have sex.

23. Club Fortune Casino Manager Martin refused to accept Plaintiff's rejection and forcibly carried her into his bedroom, where he threw her down on his bed.

24. Club Fortune Casino Manager Martin then forced himself on top of her and forcibly removed her clothes, all while Plaintiff was telling him she did not want to have sex with him and attempting to free herself from his strong hold on her.

25. Plaintiff was completely overpowered by Club Fortune Casino Manager Martin's body, as he was approximately twice her size. When it became clear that Club Fortune Casino Manager Martin was going to penetrate her body without her consent, Plaintiff pleaded with him to at least use a condom, saying that she could not afford to get pregnant or get any STDs/STIs. Club Fortune Casino Manager Martin refused to oblige, telling Plaintiff to relax because he's "had a vasectomy," and supposedly gets tested for STDs "every six months." Club Fortune Casino Manager Martin proceeded with sexually assaulting Plaintiff against her will.

26. Following the sexual assault, Club Fortune Casino Manager Martin then handed Plaintiff her pants and said he would drive her back home. At this point, Plaintiff was in a state of

4

disconnected shock as to what had just happened. She could not fathom that her supervisor had sexually assaulted her.

27. The emotional turmoil from this sexual assault event only got worse as time went on. Plaintiff finished out the work week at Club Fortune Casino which was not more than a couple of shifts in total, and then took time off of work for medical reasons, as she found it impossible to do her job without suffering emotional breakdowns due to the trauma she had endured at the hands of Club Fortune Casino Manager Martin.

28. Having never been through a situation like this before, Plaintiff was not sure how to react or what her rights were regarding reporting the sexual assault. Notably, there were no postings in the break room regarding EEOC rights or how to report sexual harassment or sexual assault.

29. Feeling like the workplace had become so toxic and unbearable that she had no choice but to leave, Plaintiff took time off from work starting on November 13, 2019, and was constructively discharged on or about December 2, 2019.

30. Plaintiff was forced to seek medical treatment and counselling for the severe PTSD she suffered from (and still deals with to this day) following Club Fortune Casino Manager Martin's sexual assault.

31. In April 2020, Plaintiff finally felt strong enough to report the sexual assault to Club Fortune Casino. That month, Plaintiff spoke with Club Fortune Casino Human Resources representative Cheri Gould on the phone. Ms. Gould informed Plaintiff that while she was not surprised to hear about Plaintiff's reasoning for feeling like she had to leave the company, that there was nothing the company could do for her at that point, as Manager Martin had recently left his position at Club Fortune. During this conversation, Ms. Gould failed to inform Plaintiff of her right to report what happened to the EEOC.

32. Plaintiff has suffered from depression, panic attacks, and bouts of severe anxiety since being sexually assaulted by Club Fortune Casino Manager Martin.

33. Upon information and belief, Club Fortune Casino was on notice of Manager Martin's inappropriate, aggressive, and sexually harassing nature towards female employees of Club Fortune Casino prior to October 17, 2019, yet still acted in an extreme and outrageous manner by providing

1  Club Fortune Casino Manager Martin with unsupervised access to Plaintiff while she was working
2  her shifts at Club Fortune Casino.

3    34.   Upon information and belief, prior to October 17, 2019, Club Fortune Casino Manager
4  Martin would spend an excessive amount of time at the table games, poker pit, and at the bars flirting
5  with and following around the female dealers, managers, and bartenders.

6    35.   Upon information and belief, Club Fortune Casino Manager Patty Hughes was on
7  notice of Manager Martin's inappropriate flirtatiousness and sexual advances toward female
8  employees at Club Fortune Casino, yet she simply told Manager Martin to go back to work in the food
9  and beverage area of the casino. In other words, instead of actually addressing and remedying the
10 problem, Club Fortune Casino shifted the problem from one area of the casino to the next,
11 intentionally electing not to provide Manager Martin with any disciplinary action or additional
12 training on sexual harassment. This was done with a reckless disregard for the care and well-being of
13 employees working in the food and beverage area of the casino, including Plaintiff.

**FIRST CLAIM FOR RELIEF**

**Violation of Title VII of the Civil Rights Act – 42 U.S.C. § 2000e *et seq.* as amended– Disparate Treatment (Sex Discrimination/ Sexual Harassment) Against Club Fortune Casino**

17   36.   Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the
18 complaint as though fully set forth herein and incorporates the same herein by reference.

19   37.   Plaintiff is a member of a protected class as a woman.

20   38.   During her employment at Club Fortune Casino, Plaintiff performed her job duties
21 according to Club Fortune Casino's legitimate expectations.

22   39.   During Plaintiff's employment at Club Fortune Casino, Club Fortune Casino (through
23 its Food and Beverage Manager Martin) subjected Plaintiff to adverse, sex-based disparate treatment
24 and harassment on a regular basis from approximately September 2019 through October 2019, which
25 resulted in direct harm to Plaintiff and ultimately in the sexual assault of Plaintiff and Plaintiff's
26 constructive discharge from Club Fortune Casino.

27   40.   Plaintiff was subjected to the numerous adverse sexual advances from Club Fortune
28 Casino Manager Martin on a consistent basis while she was at work at the casino, including but not

6

limited to: Club Fortune Casino Manager Martin commenting to Plaintiff on how distracted he became by Plaintiff's body when she was in her regular (casual) clothes before and after being in her Club Fortune Casino uniform; Club Fortune Casino Manager Martin using his hands to smack Plaintiff's rear end while she was working at the deli counter at Club Fortune; and Club Fortune Casino Manager Martin repeatedly pressuring Plaintiff to meet with him (alone) socially outside of work.

41. None of the sexual comments or sexual advances that Plaintiff endured at Club Fortune Casino were welcomed or encouraged by Plaintiff.

42. Club Fortune Casino knew or should have known about Manager Martin's sexually harassing conduct and failed to stop it, as Manager Martin had exhibited a pattern and practice of following around female dealers, managers, and bartenders and making sexual advances upon them instead of doing his job, which had gone noticed but unaddressed by Club Fortune Casino management.

43. On October 17, 2019, Club Fortune Casino Manager Martin sexually assaulted Plaintiff after pressuring her at work to join him for a drink outside of the workplace, with Plaintiff only agreeing to the drink out of fear of losing her job if she declined.

44. The sexual harassment that Plaintiff endured severely adversely affected Plaintiff's ability to do her job, as she ultimately was constructively discharged from Club Fortune Casino on or about December 2, 2019 due to the trauma she endured at the hands of Club Fortune Casino Manager Martin.

45. Male Club Fortune Casino employees with qualifications and job positions similar to Plaintiff's were not subjected to such sexual harassment.

46. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Club Fortune Casino's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Club Fortune Casino for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

47. As a result of Club Fortune Casino's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

48. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**Violation of Title VII of the Civil Rights Act – 42 U.S.C. § 2000e *et seq.* as amended– Hostile Work Environment Against Club Fortune Casino**

49. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

50. During September and October 2019, Club Fortune Casino repeatedly subjected Plaintiff to pervasive or severe sexual harassment, which sufficiently altered the terms and conditions of Plaintiff's employment.

51. Examples of the pattern of ongoing and persistent sexual harassment that Plaintiff endured in the workplace include: Club Fortune Casino Manager Martin commenting to Plaintiff on how distracted he became by Plaintiff's body when she was in her regular (casual) clothes before and after being in her Club Fortune Casino uniform; Club Fortune Casino Manager Martin using his hands to smack Plaintiff's rear end while she was working at the deli counter at Club Fortune; and Club Fortune Casino Manager Martin repeatedly pressuring Plaintiff to meet with him (alone) socially outside of work.

52. Club Fortune Casino Manager Martin's sexual advances were severe or pervasive enough to create a hostile work environment, and severely disrupted Plaintiff's work and her ability to do her job.

53. It got to the point that after Club Fortune Casino Manager Martin sexually assaulted Plaintiff on October 17, 2019, Plaintiff could only finish out that work week and then was unable to continue at Club Fortune Casino due to the severe trauma she had endured, not just from the sexual assault incident, but from the events that took place at Club Fortune Casino leading up to it.

54. The adverse treatment had a negative effect on Plaintiff's health, as she began experiencing panic attacks, insomnia, and extreme anxiety – for which she received medical treatment.

55. Plaintiff's environment was objectively hostile (such that a reasonable person would find it hostile or abusive), and she subjectively perceived it to be hostile.

56. The adverse treatment that Plaintiff endured was because of her sex, and Club Fortune Casino is liable for this harassing and hostile work environment by Manager Martin.

57. Club Fortune Casino is responsible for the hostile work environment created by its Manager Martin because it knew or should have known about the discriminatory harassment and nonetheless took no reasonable steps to cure or prevent the and sexual harassment.

58. Therefore, Plaintiff can demonstrate that Club Fortune Casino is liable for the creation of a hostile work environment.

59. Pursuant to 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Club Fortune Casino's malicious and intentional violations of federal and state anti-discrimination laws. Plaintiff is entitled to recover punitive damages in an amount sufficient to punish Club Fortune Casino for its illegal conduct and to deter other employers from engaging in such conduct in an amount to be determined by the jury deemed sufficient to do so.

60. As a result of Defendant's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

61. Under applicable federal law, Plaintiff is entitled to recover all of her attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

**Violation of NRS 613.330 – Unlawful Deprivation of Employment (Sex Discrimination)**

**Against Club Fortune Casino**

62. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

63. Club Fortune Casino discriminated against Plaintiff by subjecting her to, among other discriminatory acts, sexual harassment in the workplace, including but not limited to: Club Fortune Casino Manager Martin commenting to Plaintiff on how distracted he became by Plaintiff's body when she was in her regular (casual) clothes before and after being in her Club Fortune Casino uniform; Club Fortune Casino Manager Martin using his hands to smack Plaintiff's rear end while she was working at the deli counter at Club Fortune; and Club Fortune Casino Manager Martin repeatedly pressuring Plaintiff to meet with him (alone) socially outside of work.

64. Club Fortune Casino Manager Martin also subjected Plaintiff to a sexual assault on October 17, 2019.

65. Club Fortune Casino Manager Martin's sexual advances were severe or pervasive enough to create a hostile work environment, and severely disrupted Plaintiff's work and her ability to do her job.

66. It got to the point that after Club Fortune Casino Manager Martin sexually assaulted Plaintiff on October 17, 2019, Plaintiff could only finish out that work week and then was unable to continue at Club Fortune Casino due to the severe trauma she had endured, not just from the sexual assault incident, but from the events that took place at Club Fortune Casino leading up to it.

67. The adverse treatment had a negative effect on Plaintiff's health, as she began experiencing panic attacks, insomnia, and extreme anxiety – for which she received medical treatment.

68. Plaintiff's environment was objectively hostile (such that a reasonable person would find it hostile or abusive), and she subjectively perceived it to be hostile.

69. The adverse treatment that Plaintiff endured was because of her sex, and Club Fortune Casino is liable for this harassing and hostile work environment by Manager Martin.

70. Club Fortune Casino is responsible for the hostile work environment created by its Manager Martin because it knew or should have known about the discriminatory harassment and nonetheless took no reasonable steps to cure or prevent the and sexual harassment.

71. Other similarly situated employees who are not female were not exposed to the same discriminatory conduct.

72. As a result of Club Fortune Casino's actions, Plaintiff has suffered lost wages, mental anguish, inconvenience, and loss of enjoyment of life.

73. As a result of Club Fortune Casino's actions, it has been necessary for Plaintiff to retain the services of attorneys and she is entitled to reasonable costs and attorneys' fees.

### FOURTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress Against Club Fortune Casino**

74. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

75. Upon information and belief, prior to October 17, 2019, Club Fortune Casino Manager Martin would spend an excessive amount of time at the table games, poker pit, and at the bars flirting with and following around the female dealers, managers, and bartenders.

76. Upon information and belief, Club Fortune Casino Manager Patty Hughes was on notice of Manager Martin's inappropriate flirtatiousness and sexual advances towards female employees at Club Fortune Casino, yet she simply told Manager Martin to go back to work in the food and beverage area of the casino. In other words, instead of actually addressing and remedying the problem, Club Fortune Casino shifted the problem from one area of the casino to the next, intentionally electing not to provide Manager Martin with any disciplinary action or additional training on sexual harassment. This was done with a reckless disregard for the care and well-being of employees working in the food and beverage area of the casino, including Plaintiff.

77. Defendant Club Fortune Casino's conduct in not addressing Manager Martin's inappropriate sexual advances in the workplace and allowing him access to food and beverage employees, was extreme or outrageous with either the intention of, or reckless disregard of the probability of causing emotional distress to Plaintiff, a female food and beverage employee at Club Fortune Casino.

78. Defendant Club Fortune Casino was fully aware of the severe harms that would likely result from not addressing Manager Martin's misconduct in the workplace, yet the company acted with complete indifference for the female employees in the food and beverage area such as Plaintiff.

79. As a result of defendant Martin's extreme or outrageous conduct, Plaintiff was forced to endure sexual harassment at the Club Fortune Casino workplace, which eventually culminated in Club Fortune Casino Manager Martin placing pressure on Plaintiff to meet him socially outside of work, leading to Plaintiff being sexually assaulted by Manger Martin.

80. Plaintiff suffered severe emotional distress as a result of Club Fortune Casino's actions described herein.

81. Specifically, Plaintiff has become extremely anxious, depressed and reclusive and has been unable to return to her normal activities.

82. Defendant Club Fortune Casino's actions as alleged herein are atrocious and utterly

1  intolerable and go beyond all possible bounds of decency.

2      83.    As a direct and proximate result of defendnt Club Fortune Casino's conduct as set forth
3  above, Plaintiff has sustained significant physical, mental, emotional and psychological injuries, all
4  or some of which conditions may be permanent and disabling.

5      84.    As a direct and proximate result of defendant Club Fortune Casino's conduct as set
6  forth above, Plaintiff has incurred substantial expenses for the medical care and treatment of her
7  injuries and will continue to incur additional expenses for her continuing medical care and treatment
8  into the foreseeable future, in an amount in excess of $15,000.00, to be proven at trial.

9      85.    As a direct and proximate result of defendant Club Fortune Casino's conduct as set
10 forth above, Plaintiff has been incapacitated from pursing her usual employment and activities, which
11 have caused and shall continue to cause Plaintiff's loss of earning capacity, lost wages, and loss of
12 enjoyment of life, in an amount in excess of $15,000.00, to be proven at trial.

13     86.    Defendant Club Fortune Casino's acts were willful, malicious, fraudulent and
14 oppressive, and in conscious disregard of Plaintiff's rights, safety, and health.  Thus, defendant Club
15 Fortune Casino's should be punished by the imposition of punitive damages in an amount to be more
16 specifically determined by the trier of fact at trial, to punish defendant Club Fortune Casino's for this
17 conduct and in order to deter defendant Club Fortune Casino, and others similarly situated, from
18 engaging in like conduct in the future.

19     87.    As a direct and proximate result of defendant Club Fortune Casino's conduct as set
20 forth above, Plaintiff has been required to engage the services of an attorney, incurring attorney's fees
21 and costs to bring this action, and Plaintiff is therefore entitled to reasonable attorney's fees and costs
22 incurred in this action.

### FIFTH CLAIM FOR RELIEF

**Battery Against Kenneth Martin**

25     88.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the
26 complaint as though fully set forth herein and incorporates the same herein by reference.

27     89.    Plaintiff was not interested in having any physical contact with Club Fortune Casino
28 Manager Martin, yet Manager Martin touched her body anyway, resulting in harmful contact,

1  including at Club Fortune Casino when he used his hands to touch Plaintiff's rear end.

2      90. Club Fortune Casino Manager Martin also willfully and intentionally had sexual relations with Plaintiff resulting in harmful physical contact on October 17, 2019.

4      91. None of the physical contact that Club Fortune Casino Manager Martin inflicted upon Plaintiff was welcomed or encouraged.

6      92. Plaintiff has been subjected to great bodily harm, including physical pain, illness, depression, and other complications associated with defendant Martin's forceful sexual conduct.

8      93. Therefore, defendant Martin is subject to liability for battery by the harmful, offensive and sexual contact that he forced Plaintiff to endure.

10      94. As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has sustained significant physical, mental, emotional and psychological injuries, all or some of which conditions may be permanent and disabling.

13      95. As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has incurred substantial expenses for the medical care and treatment of her injuries and will continue to incur additional expenses for her continuing medical care and treatment into the foreseeable future, in an amount in excess of $15,000.00, to be proven at trial.

17      96. As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has been incapacitated from pursing her usual employment and activities, which have caused and shall continue to cause Plaintiff's loss of earning capacity, lost wages, and loss of enjoyment of life, in an amount in excess of $15,000.00, to be proven at trial.

21      97. Defendant Martin's acts were willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights, safety, and health. Thus, defendant Martin should be punished by the imposition of punitive damages in an amount to be more specifically determined by the trier of fact at trial, to punish defendant Martin for his conduct and in order to deter defendant Martin, and others similarly situated, from engaging in like conduct in the future.

26      98. As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action, and Plaintiff is therefore entitled to reasonable attorney's fees and costs incurred in

this action.

## SIXTH CLAIM FOR RELIEF

### False Imprisonment Against Kenneth Martin

99. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

100. On October 17, 2019, as described herein, defendant Martin acted in a way to confine Plaintiff within boundaries fixed by defendant Martin.

101. Defendant Martin's acts directly or indirectly resulted in a confinement of Plaintiff.

102. Because of defendant Martin's large stature, Plaintiff felt trapped when defendant Martin forcibly carried Plaintiff into his bedroom without her consent and placed her on the bed with his body preventing her from leaving. Plaintiff felt like there was physically no way she could escape.

103. Plaintiff was conscious of the confinement and was harmed by it.

104. As a direct and proximate result of defendant Martin conduct as set forth above, Plaintiff has sustained significant physical, mental, emotional and psychological injuries, all or some of which conditions may be permanent and disabling.

105. As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has incurred substantial expenses for the medical care and treatment of her injuries and will continue to incur additional expenses for her continuing medical care and treatment into the foreseeable future, in an amount in excess of $15,000.00, to be proven at trial.

106. As a direct and proximate result of defendnt Martin's conduct as set forth above, Plaintiff has been incapacitated from pursing her usual employment and activities, which have caused and shall continue to cause Plaintiff's loss of earning capacity, lost wages, and loss of enjoyment of life, in an amount in excess of $15,000.00, to be proven at trial.

107. Defendant Martin's acts were willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights, safety, and health. Thus, defendant Martin should be punished by the imposition of punitive damages in an amount to be more specifically determined by the trier of fact at trial, to punish defendant Martin for his conduct and in order to deter defendant Martin, and others similarly situated, from engaging in like conduct in the future.

108. As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action, and Plaintiff is therefore entitled to reasonable attorney's fees and costs incurred in this action.

### SEVENTH CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress Against Kenneth Martin**

109. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs of the complaint as though fully set forth herein and incorporates the same herein by reference.

110. Defendant Martin should have been aware of the emotional and psychological trauma associated with forcing another person to have sexual relations when they do not consent to doing so.

111. Moreover, during the forced sexual assault on October 17, 2019 that defendant Martin initiated, Plaintiff made it known to defendant Martin that she did not consent to having sexual relations with him, and even pleaded with defendant Martin to at least wear a condom if he was going to have relations with her against her wishes, which he also refused to oblige.

112. Thus, defendant Martin undoubtedly knew that forcibly taking Plaintiff to his bedroom, forcibly having sex with her, and refusing to wear a condom in the process would be emotionally and physically debilitating to Plaintiff.

113. However, defendant Martin acted with reckless disregard by sexually assaulting Plaintiff as described herein, even though Plaintiff expressed her discomfort, disapproval, and non-consent to having sexual relations with defendant Martin.

114. Defendant Martin was fully aware of the severe harms that would likely result from his conduct, yet he acted with complete indifference for anyone but himself.

115. The foregoing conduct was extreme or outrageous and defendant Martin acted with the intention of causing, or with reckless disregard of the probability of causing, emotional distress to Plaintiff.

116. As a result of defendant Martin's extreme or outrageous conduct, Plaintiff was forced to have relations of a sexual nature with defendant Martin, and Plaintiff suffered severe emotional distress therefrom.

117.   Specifically, Plaintiff has become extremely anxious, depressed and reclusive and has been unable to return to her normal activities.

118.   Defendant Martin's actions as alleged herein are atrocious and utterly intolerable and go beyond all possible bounds of decency.

119.   As a direct and proximate result of defendnt Martin's conduct as set forth above, Plaintiff has sustained significant physical, mental, emotional and psychological injuries, all or some of which conditions may be permanent and disabling.

120.   As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has incurred substantial expenses for the medical care and treatment of her injuries and will continue to incur additional expenses for her continuing medical care and treatment into the foreseeable future, in an amount in excess of $15,000.00, to be proven at trial.

121.   As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has been incapacitated from pursing her usual employment and activities, which have caused and shall continue to cause Plaintiff's loss of earning capacity, lost wages, and loss of enjoyment of life, in an amount in excess of $15,000.00, to be proven at trial.

122.   Defendant Martin's acts were willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights, safety, and health.  Thus, defendant Martin should be punished by the imposition of punitive damages in an amount to be more specifically determined by the trier of fact at trial, to punish defendant Martin for his conduct and in order to deter defendant Martin, and others similarly situated, from engaging in like conduct in the future.

123.   As a direct and proximate result of defendant Martin's conduct as set forth above, Plaintiff has been required to engage the services of an attorney, incurring attorney's fees and costs to bring this action, and Plaintiff is therefore entitled to reasonable attorney's fees and costs incurred in this action.

## DEMAND FOR JURY TRIAL

124.   Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff invokes her right to trial by jury in this civil action.

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For a judgment in favor of Plaintiff against Defendants, and each of them, on the complaint and all claims for relief asserted therein;

2. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendants' conduct;

3. For an award of compensatory damages from mental anguish, emotional distress, pain and suffering, humiliation, harm to reputation and other losses incurred by Plaintiff as a result of Defendants' conduct;

4. For an award of prejudgment and post-judgment interest;

5. For an award of punitive damages;

6. For an award of Plaintiff's costs of suit incurred herein;

7. For an award of attorney's fees and related expenses pursuant to § 706(k) of Title VII, 42 U.S.C. § 2000e-5(k) and other corresponding federal law; and

8. For an award of such other relief the Court may deem just and proper.

DATED this 11th day of March, 2021.

                                                      Respectfully submitted,

                                                      MAIER GUTIERREZ & ASSOCIATES

                                                       /s/ Danielle J. Barraza
                                                      DANIELLE J. BARRAZA, ESQ.
                                                      Nevada Bar No. 13822
                                                      8816 Spanish Ridge Avenue
                                                      Las Vegas, Nevada 89148
                                                      *Attorneys for Plaintiff Carmela Scafidi*

# EXHIBIT 1

# EXHIBIT 1

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Carmela M. Scafidi
400 N Major Ave #1012
Henderson, NV 89015

From: Las Vegas Local Office
333 Las Vegas Blvd South
Suite 5560
Las Vegas, NV 89101

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2021-00091 | Michael L. Mendoza, Supervisory Investigator | (702) 553-4466 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☒ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Tamara M. West
Digitally signed by Tamara M. West
DN: cn=Tamara M. West, o=EEOC,
ou=Director-LVLO,
email=tamara.west@eeoc.gov, c=US
Date: 2020.12.18 08:41:33 -08'00'

Enclosures(s)                          Tamara M. West,                          (Date Mailed)
                                       Local Office Director

cc: Human Resources
Director
CLUB FORTUNE CASINO
725 S Racetrack Rd
Henderson, NV 89015

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

**IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.**